at all, Travelers. Mr. Boutros. Thank you, Your Honor. May it please the Court. I'm Theodore J. Boutros, Jr. representing Travelers' Surety and Casualty Company, and I'd like to reserve three minutes for rebuttal. This case presents an important but simple question regarding the meaning of an asbestos exclusion in an insurance contract. The question is, does the phrase, arising out of asbestos, include losses caused by asbestos contained in a product? Right. We're with you on that. A lot of briefing. And I think, Your Honor, I'll cut to the chase. The answer is clearly yes, and the Court should reverse. I don't think the Court needs to So it's so clear, why has there been litigation over many, many years and a contrary finding by a careful district judge after taking evidence, including evidence that Travelers had policies that were more definitive about their exclusion than this one? Your Honor, I think that we respectfully submit that the district court applied the wrong legal standards. Under Pennsylvania law, the poll star, the Madison Construction case says it best, the poll star is the language of the policy. Right. Nobody is suggesting it's not the language of the policy. The question is, and the question you've got to persuade us of now is, was the district court wrong in asking the question, can the word asbestos mean more than one thing? Can it mean just the raw material and then as an adjective, a modifier for other nouns? Or can it only mean what you say it means, which is asbestos in any form whatsoever? Was the district court wrong to think it could mean more than one thing? Yes, Your Honor. I believe that's correct. But it doesn't matter here, because even if we accept the district court's analysis, which inserted the phrase raw, relatively unprocessed state into the contract, which wasn't there, the raw asbestos, their own expert admitted that the fibers were the same. So raw, unprocessed asbestos was the cause of the injuries that give rise to the claim. I'm sorry, go ahead, Judge. That's where the district court put that theory aside as being one related to tort causation. If we go back to the contract here, let's say we accept that on the face of the contract, it is unambiguous. But then we have Sunbeam and Pennsylvania law telling us that we look to trade usage and that it's always relevant even if there is not ambiguity. So in light of that, and where we have a record where we have only GRC's expert, we have only the policies that GRC put in that show, as Judge Jordan noted, even travelers using more precise language. And we have no rebuttal evidence of that, not even parole evidence that came in. On this record, how could we say that it's a clearly erroneous finding by the district court that frequent trade usage was that the term asbestos in this context means that it's limited to the raw, unprocessed materials? Several reasons. First, Your Honor, the legal test under Pennsylvania law, the Aston Johnson case makes very clear under these circumstances where the language of the contract, asbestos means asbestos the mineral. No one disputes that. So the trade usage was used to try to show that it meant something different than its plain language. And there you need universal, nearly universal evidence that people in the industry used the phrase to mean something contrary to the plain language. Here we had a smattering of contracts that were put in other contracts. I want to address the prior travelers. But Your Honor, you're not answering. I'm sorry, but with all respect, Mr. Boucher, you're saying here we had a smattering of evidence. But where was your evidence? This was a trial with findings of fact about how things were used. They brought somebody in. They put the person on the stand. The person on the stand said, this is how it was used. Asbestos was used to mean the raw mineral, and there was one set of risks associated with that. And when you wanted to talk about asbestos-containing materials, you used a different term. And this is how it was dealt with. And travelers themselves participated in the Wellington Settlement. So that's our evidence. And travelers showed up with what? Your Honor, the evidence, I will embrace the expert that the plaintiff put on. His testimony supports our position. He wasn't an insurance underwriting expert. He testified that asbestos in any form was the cause of the injuries, that the asbestos fibers caused the injuries. I urge the court to take a look at page 315 to 316, where he was asked whether the phrase arising from asbestos to him would include asbestos-containing in a product. And he agreed that it did. And he said it even would include asbestos. Did you make that argument to the district court? Because General Fractory said you did. They said pretty strongly that travelers, you staked your claim on the meaning of the word asbestos. And the but-for causation argument is cooked up for appeal. What's your response? My response, Your Honor, is that it's flatly incorrect. Again, on page 4 and 5 of our reply brief, we cite places where we clearly made a certain, take a look at page 330 of the appendix in 331. Counsel argued travelers' exclusion is very simple. It just says arising out of asbestos. And then he mentions that the others have different language, but that doesn't change this language. And then says all we're talking about is arising out of asbestos. That is the issue. And then he points to the expert who said asbestos means asbestos. And then he says, I don't think it could be clearer, this is a quote, it didn't mean asbestos in one particular form. It meant asbestos, the stuff that was causing these injuries, causing these diseases, and that was causing these lawsuits. That's exactly our argument here. They didn't cite all the same cases as was in the trial, but the arguments were clearly made. And it's common sense, Your Honor. Did it show up in a brief anywhere? Because you cited, and I did read your reply brief, you cite the oral argument or presentation. Barrels of inks have been spilled on this. Did you anywhere make the argument to the district court, Your Honor, whether you consider asbestos to mean asbestos, the raw mineral, or asbestos as an adjective to be a modifier for other nouns? Doesn't matter because in the end it's but for causation. Is there any place in your briefing before the district court where that argument is made? Not in those precise words. I'm not asking for precise words, Mr. Winters. I'm asking you for, did you make that argument and can you point us to where it is? Certainly, Your Honor. We cited in the summary judgment motion, let me just give you a coordinates, the docket number 338 at 10 and 11. We cite this in the briefs. Summary judgment, the trial was argued, a rise out of exposure to the asbestos in GRC's products. And if there was no asbestos in the products, there would be no asbestos related claims. Later on, in the pretrial memorandum, this is at docket 599 at page five, trial was argued that the exposure to asbestos fibers or asbestos dust is the ultimate cause of all asbestos related disease. And then it made the claim over and over again that asbestos was asbestos and that the fibers, and I believe this expert admitted this, it couldn't be clearer, that the asbestos didn't change. And the parliamentary decision from the Wisconsin Supreme Court made this point. But we need to look at this not in terms of tort causation, but in terms of its meaning in the context of an insurance policy. And here, although maybe there are arguments you could have raised as to the limited scope of Mr. Lark's expertise, the district court, he was offered as, quote, an expert as to how the insurance industry used asbestos related terms. And he was qualified as that expert without objection. So when you're pointing out that most of his experience was as a plaintiff's lawyer, that may be true. But he was qualified as an expert on the terms as used in the insurance industry. I respectfully disagree. He was allowed to give expert testimony on whatever was called industry usage. He admitted on the stand he was not an expert on insurance policies. He hadn't looked at the policies in this case. He said he had read one at one time. He talked about the way defense lawyers and plaintiff's lawyers in insurance companies talked about these things in deciding what the exposure should be. That's a very different thing. And, again, when asked whether arising from insurance, and it is a tort causation error. That's what this court informed insurance held. That's what Madison Construction from the Pennsylvania Supreme Court held. But he, by no stretch of the imagination, gave testimony regarding what the practice was in the industry. What are we to make of the fact that there was this evidence of industry practice, the insurance industry practice in particular, that talked about injuries or loss or damage arising out of asbestos or asbestos-containing products? Why wouldn't it be appropriate for the district judge in that instance to say, first, this shows a latent ambiguity, and interpretation is at least reasonable, and therefore they win? There are several reasons. First, courts take a look at the Fifth Circuit's decision and the Katrina decision with the amicus brief site and the Pennsylvania Supreme Court cases that say other people's contracts, the fact that others put in a laundry list of examples, which as this court knows, can create more ambiguity, doesn't mean that this contract is ambiguous. Everybody agrees it's the asbestos in the products that cause the injuries for which coverage is being sought. Everybody agrees that arising out of asbestos means was it caused by asbestos? So there's just, on its face, there's no reasonable interpretation that the asbestos in these products didn't cause the injuries, and therefore they're excluded. So what you're saying is that no reasonable person could look at this, and therefore the district court, after years of litigation, summary judgment motions, more than one district court judge involved in the case, that everybody who looked at this, including the expert that came in and testified, they're all manifestly unreasonable. That's the tough position you're taking, right? Nobody could look at this and reasonably see this any other way, so that we're talking about years of gross waste and foolishness on the district court bench. I mean, I'm putting it in harsh terms, and you're much too polite to say it that way, but isn't that the upshot of what your position has to be? Nobody could look at this any other way. Your Honor, I think because of legal errors that were made, the case went off the wrong track, and we had a trial when none was necessary. It happens. We had multiple district court judges, but the legal errors were made in terms of how we interpret the contract. And if we look at the Madison construction case... Where's the legal error? Because your assertion that nobody could look at this in any other way actually seems to imply some factual issue associated with trade usage as to which there was testimony, right? If you say nobody could look at this in any other way, aren't you saying all that evidence has to be disregarded? Anything that anybody said about trade usage cannot be believed, because there's only one way to see this. No, Your Honor. Even if we accept that that was legitimate evidence of trade usage, it doesn't meet the nearly universal standard. Some of the language says, from the other policies, asbestos contained in products. According to Plaintiff, that would be different than asbestos contained in products, but it still uses the word asbestos. That's all policies though, right? Didn't you have the pre-1985 policies? Let me address this. I think as long as I can keep a little time for rebuttal, thank you. Let me go to... So in 1985, up until 1985, the prior policy said the insurance is unapplied to bioinjury, which arises in or out of asbestos, and then it spells out including other issues. That's the exact same language here. On the context... Wait, wait, wait. What do you say that's the exact same language? I mean, you just eluded the part that the district court relied on heavily, which is to say you eliminated in your earlier contracts any question about the meaning of this clause, and then you chose not to, for some reason, to include that greater specificity when you hit 1985. You're a sophisticated party. You should live with your choices, I think is sort of implicit in what the district court is saying. What's wrong with that reasoning? Let me put it in context. Madison Construction says you look at the context. You don't look at ambiguity in a vacuum. At the time in 1985, this court had said at the time, there was already a crisis of epidemic proportions in asbestos. General Refractories was already subject to thousands of lawsuits. The company had exclusions. All the other companies, the evidence does show all the other insurance companies were excluding asbestos claims. The company simplified the language. If you say I'm excluding asbestos, including, and you list things, if you knock off the including, that doesn't mean you're not including those vendors. I respectfully submit this court should encourage clear grafting and don't encourage parties to list out things and link things. It should not be simpler. So are you saying, Mr. Boutrous, that the context in which all this happened does matter? That the surrounding events, what was happening in the industry, how it was being used in the trade at the time is significant in understanding whether there was ambiguity? Well, with respect to judging the intent of the parties based on the language of the contract, yes, and as I mentioned, and if that's true and they came forward with evidence and you didn't, where does that leave you? Well, we did, Your Honor. We showed the back and forth between the parties where it's absolutely clear. In 1979, General Refractories said, since 1979, there has been no asbestos coverage. They used the term the same way. Yeah, there's a fact finding by the district court that says it's not clear and that in of the district court didn't bear in the district court's view in any meaningful way on that. Your Honor, I go back to the point, Your Honor. This is a pure legal question and ask yourself, does arising out of asbestos, if someone told you there was asbestos in this bench and someone contracted a disease because of the asbestos in that bench, would Your Honor say that arises out of asbestos? I respectfully submit you would. That's the question. Does your argument hinge on whether it's deemed or the record would support frequent use or universal use? We believe under the Aston Johnson case, which everyone agreed below, was the standard that where the trade usage is being used to contradict unambiguous language. And asbestos, everybody knows what asbestos means. What raw fiber that's put in a product, it's still asbestos. There needs to be near universal language, that it means something different. If we disagree with you about that being the holding of Aston Martin or that being consistent in view of Sunbeam with Pennsylvania law, is that the end of the argument? That's to say if we conclude that you don't need universal use, that frequent use is enough to allow for evidence of trade usage to establish ambiguity, then do the appellees prevail here? No, Your Honor, because we believe even if we accept the district court's interpretation that the language of the contract was focused on asbestos that was in its raw and unprocessed form, that is still the cause of the injury. We're back to but-for, right? We're back to but-for, and it's clearly preserved, and the court should reverse and hopefully I can get a few minutes for rebuttal. Okay, absolutely, you'll have your time for rebuttal. Thank you, Your Honor. All right, Mr. Conway. Good afternoon, Michael Conway on behalf of General Refractories. A couple of just quick factual corrections that were just made by opposing counsel. Opposing counsel said that all of the other policies that were involved in this litigation had asbestos exclusion. That's not true. It was litigated. There were policies that did not have asbestos exclusions. In fact, Travelers was the primary carrier from 1974 to 1985. They had primary dollar-one coverage with defense costs outside of limits, and that policy had no asbestos exclusion. I think, to me, the real heart of the case here is that Travelers' exclusion is an affirmative defense. They had the burden. They went first. They elected what evidence to put on, and other than a smattering of letters, they put on nothing. Mr. Conway, because their primary argument, and the one that would be most helpful for you to meet head-on, is that there wasn't any need for evidence here. This is clear on its face, and, indeed, the implication is, you know, there should not have been the taking of evidence at all. So it would be most helpful if you attack that but-for argument. That's the one you seem most to want to avoid since you argue vociferously that it's waived, so why don't you take it on and tell us why. No matter what the word asbestos means, but-for doesn't save their construction and put them in the driver's seat to win here on appeal. Sure. Let me just talk about the waiver issue in terms of replying to a couple of things that they said in their reply. There was an evidentiary hearing on what exclusions would come in. It was in October of 2015, and during that hearing, Travelers repeatedly said, we're only here to discuss one word, asbestos. In fact, Judge Restrepo said it after three or four times, so we're only looking at asbestos, we're only looking at asbestos, and they said yes. And that was a strategic call by them because they didn't want us to look at other exclusions. Mr. Connolly, this will help if you give us the record site for that. Of course. The transcript is on-it's the October 2nd transcript. The citations are page 22. This is from Travelers Council. The only word is asbestos, and that's the only thing Travelers has asked, that that word be interpreted in accordance with the plain, ordinary, and customary meaning. Is this in the joint appendix? It is. I'm sorry, I don't have the appendix number on it. I just have a copy of the transcript, but I'll dig it up for you. In the hearing appendix 323, it talks about these words being next to each other. It's very simple. Claims arising out of asbestos about as broad as you could possibly make it, but that's the point. Arising out of asbestos, that's the key language. Mr. Locke testified about asbestos in any form causes asbestos disease. How is this argument not preserved? I think we have to make a distinction between what they were arguing at the lower court was that the tort liability, the claims, arise from asbestos. In fact, opposing counsel, when you started off, you said the cause of the injury gave rise to the claim. Well, this exclusion doesn't talk about the cause of the injury or the claim. It talks about general refractories, the loss that general refractories has to pay. The arising out of language is in all of these other exclusions. So when Hartford says asbestos or asbestos-containing product or GUCA or AIG, they preface it by saying arising out of. It cannot be that all of these insurance companies use superfluous words. It cannot be that they use these as bells and suspenders as they suggest. That's not quite true because when we look closely at the policies, none of these policies has a term arising out of asbestos or asbestos-containing products. Where they use the disjunctive of or, they're dealing with different things like disposal of any asbestos or asbestos-containing material or arising out of the manufacturing, selling, or distributing of products containing asbestos. Arising out of the existence or manufacturing, sale, or handling of asbestos or asbestos-containing products. Given this different language in context, there may well be good reason to make a distinction between the two things because it would not be obvious on its face. So we don't have the perfect analogy that's been presented. We just see that there are times in the context of different words used in other policies that they're spelled out and at least three of these policies exclude asbestos and then, as your colleague was pointing out, go on to give a list of the kinds of things that are included specifying the asbestos and asbestos-containing product. But those could be argued to support their position. That is, the umbrella term asbestos clearly contains all of the things that follow. Well, I don't know why an insurance company, even if the preparatory words were different and they were talking about disposal, I don't know why they would have said asbestos or asbestos-containing products if they believe that asbestos subsumed asbestos-containing products. They would have just said asbestos. But that wasn't our only evidence. I mean, that was evidence that we put in as how the words were used in particular. Hold on a minute. We've kind of veered off an important point here, which is their but-for argument. Assume for the sake of discussion that we say it's not waived. Meet it. They say arising out of it's not just a tort concept. It has meaning in insurance language. Everybody understands that meaning, and that meaning is but-for causation. So it doesn't matter whether asbestos could mean this or could mean that. In the end, everybody agrees that asbestos fiber is the but-for cause of the injuries which underlie the net loss. That's good enough. Meet that argument. Sure. We have to look at the language in the context of the time. Sundeem, Estin, Johnson say that in terms of interpreting it. So we have to look at it in the context of the time. The but-for analysis is an analysis that goes to the ignores, the custom and practice at the time ignores the other reasonable interpretations. The but-for analysis is simply them saying that our interpretation is right. I think what they're saying is not just ignore the other interpretations. I take their argument to be, and they'll speak for themselves, but I take their argument to be that in the end, even though we fought hard over what the word asbestos means, it can go ahead and assume it's got some ambiguity, and it could mean that it's talking about just the raw fiber and not the asbestos-containing products that GRC makes. In the end, it's still the fiber causing the problems, so it's still the but-for cause. That's what I take their argument to be. Ambiguity or no, it's still the but-for cause. What's wrong with the logic of that? The but-for cause of what? It's the but-for cause of the tort liability and the underlying action. Why is it the but-for cause of the loss? Right, which leads to the loss. But it isn't the loss. Here, the underlying claims against General Refractories, General Refractories and other companies that manufacture asbestos-related claims are singled out in those complaints and referred to as companies that manufacture asbestos-containing products as distinct from those who mine, mill, or process asbestos. The settlements that these monies would go to pay, each and every one of those settlements, you only got in the settlement list if you proved exposure to an asbestos-containing product of General Refractories. I'm not sure I'm following you. Why don't you put it this way? Approach it by talking to us about Madison Construction. In Madison Construction, the Supreme Court of Pennsylvania looks at that pollutant exclusion and it doesn't say, you know, well, that might be the but-for cause for why the worker fell into the pit. But we're talking about the loss here. It just says arising out of has a specific meaning. It seems to talk about it as a but-for cause. Why wouldn't we be guided by that kind of thinking for Madison Construction? Because there are exclusions, and there are some of the exclusions in this case that say that a claim is excluded, a claim arising out of asbestos. This policy does not say a claim arising out of asbestos. It's excess net loss arising out of asbestos. It's excess net loss, and excess net loss is sums which the insurer becomes legally obligated to pay. Isn't that a fancy way of saying sums that you pay because of a claim? Well, it says as a result of an occurrence, right? The sentence goes on to say as a result of an occurrence. An occurrence is an injury leading to financial liability. It is. But my point is that there could have been a distinction by them made as to claim versus loss. They chose to write a policy that excluded a loss. They could have said the claim, and they could have tied the liability to the underlying liability in the underlying case. But all this still goes to the idea that the only interpretation of asbestos is as travelers would read into the policy. That's inconsistent with all of the evidence that was put on and Judge Restrepo heard. The but-for analysis subsumes that asbestos can only be read one way. When you say it subsumes it, I'm having trouble with that because I don't think it subsumes it. What it seems to be saying is it's irrelevant. It's irrelevant whether asbestos can be read more broadly or more narrowly because in the end, whether you read it the way the district court read it and you urge or whether you read it the way they urge, in the end, the only thing that matters is whether the fiber is embedded in a product or not in a product. In the end, it causes the loss. That's the pitch they're making. So it's not that they're saying that the meaning is subsumed in but-for. They seem to be saying this precise meaning of asbestos, at least as between the positions taken by the parties, is immaterial because the causation piece covers both of them. That's what I hear them saying. That's what I'm, and you're no doubt trying to get me to see the light from your side, but I'm asking you to keep helping me. Sure. Again, if the causation was as clear as that, that asbestos could only mean one thing and that asbestos is as broad as they say, and that the but-for only can arise out of asbestos, implicit in that argument is that they took a 12-word exclusion that they were using previously that said asbestos, asbestos fiber, asbestos-containing product, and elected to broaden it by taking all those words out other than asbestos. My point is that you can't look at the but-for causation until you look at the word asbestos. Arising out of asbestos, what is the meaning of asbestos? How is it used at the time? The but-for analysis is going to be the same in all these other exclusions because all these exclusions all say arising out of a similar language. So if arising out of asbestos was the same thing as arising out of asbestos-containing products, they wouldn't have said that. My point is you have to look at the context of the time, and our evidence in this case that Judge Restrepo heard and found was cumulative, consistent, and uncontradicted. Now, in terms of why would members want to agree to ensure? They know general refractors, you make products that are used as liners and boilers and things like that, I take it. Yes. They have to extend, they had to extend, withstand extreme heat. And by the way, I did refractory work when I was in college, and I took out refractory probably asbestos. Asbestos. Yes. So I know what you're talking about in terms of materials. But why would travelers be interested in writing something that exposed them to liability? Because they know your products contain asbestos. Well, first of all, travelers were elected to put on no evidence as to what they expected, what they intended, or what they underwrote. Second of all, this is a form exclusion. It was not drafted for general refractories. General refractories did not receive it until after the policy was sold. There is nothing in the record that would indicate that this exclusion was used because of any particular risk that general refractories presented. This was a form exclusion. Just like the policy that a form is holding. Why does the fact that there is a form exclusion, what meaning does that carry? I mean, why would we assume that because it's a form exclusion, it wasn't meant by the parties to address a known risk of the insured? Well, what I'm asking you not to do is to assume. There is nothing in the record that says that this exclusion was used because of a specific risk profile of general refractories. They underwrote the policy. They had the underwriting file and they had the underwriters. There is no evidence in the record that this exclusion was intended to address the risk, specific risk that general refractories faced. Remember, in the context of the time, and we put this in the record in terms of the FARE Act, there are only about 9,000 cases nationally on asbestos. Within 10 years, it went to 48,000. So you have to look at it in the context of the time. As Mr. Locke said, the real focus of the litigation at that time was on the Meyers and Millers, the Johns Mansfields, and the asbestos-containing product manufacturers were all distinguishing themselves. So it's very possible that an upper-level excess carrier might have said, without looking at the risk, without looking at any of the underwriting criteria or what the specific risk is, we know that the main liability out there is for these companies that mine, mill, and process asbestos. So we're going to put our form of asbestos exclusion in there. All right. Now, I know you're on our clock now. We gave Mr. Boutros a little extra time, so we'll give you a little bit here, too. I'm curious to know, assume we were going to say, okay, Mr. Connolly and the district court have persuaded us, but here we've got broad policy concerns expressed to us by the insurance industry amici. How would the court write a case that didn't raise the specter that is raised in the amicus brief of undermining the thoughtful allocation of risk that sophisticated parties do for themselves when they sit down and negotiate policies in Pison? Well, contrary to the protests raised by the amici, this case raises no new issues. It raises no broadening of Pennsylvania law. What are you talking about? Arising under gets used all the time. That idea, that arising out of language, is all over insurance policies, commercial liability policies. How can you say this doesn't have implications beyond just your case? It's because the key here was the interpretation of the word asbestos. If you're going to write an opinion that says the district court got it right, what the district court got right was interpreting asbestos given the specific facts of this case. A form exclusion, uncontested evidence, custom and usage evidence. It was very specific to this case. United Policyholders pointed this out in their amici brief as well, that the facts here are very specific. They're only with regard to this particular exclusion, this particular word, and this particular set of evidence that General Refractories put on that was uncontested. If there's another exclusion that says arising out of, it's not a question whether it's but-for. It's arising out of what? And what is that term? What does that term mean? And here the court interpreted this policy to say that there could be two reasonable meanings, and that's the issue, that there could be two reasonable meanings. All right. Anything else? No. A couple questions. If we, taking your own experts' words, and going back to the but-for causation concept, that asbestos fiber causes a disease, whether it's a manufactured product, whether it's raw fiber or any combination, and then Madison Construction where the Pennsylvania Supreme Court is telling us with an analogous substance, and in the context of an exclusion, that while the form of the substance may have changed, its chemical composition did not, why putting those things together don't we need to say, as interpreting this policy under Pennsylvania law, that loss arising out of asbestos covers asbestos in whatever form it appears, just as in Madison Construction? Because unlike in Madison Construction, here you had custom and usage evidence. Here you had trade usage evidence, and you had cumulative and consistent custom and usage evidence. Madison Construction is essentially a plain meaning interpretation case. So if you're going to use the analysis set forward in Madison Construction, you look at the plain meaning. But Pennsylvania law, Sunbeam, Askin, Johnson, all say that the court can consider custom and usage, including considering custom and usage to determine if there is an alternative meaning of the language. Madison Construction is not a case that dealt with the implication of custom and usage evidence on an exclusion. It talked about what the exclusion meant. If we were only here on the plain meaning, if we were arguing the summary judgment motion again, I could understand that argument. But here we have two judges who said this is not that clear. We understand that this is not that clear, and Judge Ludwig said I want to hear evidence, and Judge Restrepo heard that evidence. Do you agree that the evidence of trade usage does not rise to the level of showing universal usage? Absolutely not. That was the standard that Judge Restrepo used. In his opinion, the standard that he cited was certain, reasonable, distinct, uncontradicted. This evidence was uncontradicted. Well, he also references frequency. Well, he references frequent uses to one type of the evidence. Not the cumulative evidence. He referenced it only as to one of the forms of evidence, not the cumulative evidence. I don't know how you could not meet that standard if there is no evidence that opposes it. It's uncontradicted. But even if it's not, again, Aston Johnson, if you look at Aston Johnson, it is nowhere near as broad as travelers would read into it. I was counsel for Aston Johnson. I argued here that it had to be uniform, continuous. And what the Third Circuit said is, that's not necessarily the case. You have to look at the context. In that case, in Aston Johnson, the exclusion said, exposure to asbestosis. Exposure to asbestosis. We argued that asbestosis means asbestosis. The insurance companies argued that asbestosis at the time meant asbestosis, mesothelioma, or lung cancer. We argued that it had to be uniform. The Third Circuit said no. In that case, the language, because it said exposure to asbestosis, was nonsensical. But in making that ruling, they also said that you can consider custom usage in the interpretation. And the restatement in Comment A specifically says, custom usage can be used to show an alternative, reasonable interpretation. Do you disagree that Aston Martin instructs that if we conclude that the face of the policy here is unambiguous, that what we then need to look for as a matter of Pennsylvania law is universal trade usage? If we were trying to change a word, the law school context of the caviar, a pound of caviar being 12 ounces, not a pound. If we were saying asbestos had a different meaning, and we were trying to give asbestos a different meaning, then I would agree with you. We're not trying to give asbestos a different meaning. We've never tried to give asbestos a different meaning. All we've said is the custom usage evidence supports our reasonable interpretation that at the time asbestos was distinct from asbestos-containing product. Under that analysis, that was not a situation that Aston Johnson faced. But other courts, and they're cited in our brief, have said that under those circumstances, the court can consider custom usage evidence as an interpretative aid. So you would say that the appropriate standard is that the evidence of the custom was certain, reasonable, distinct, uncontradicted, continued, and so notorious as to be probably known to all parties to be controlled by it? I believe that that's the standard if you're trying to get a meaning to a term that's unambiguous. If you're trying to change the meaning of a term, I do not believe that that's the standard. If you're trying to use custom usage to show that there's another reasonable interpretation of the phrase. Is there any court besides the district court here that's accepted your argument? Is there any court that's interpreted the term asbestos to mean only raw asbestos and not asbestos-containing products? Or even to give rise to an ambiguity as to whether it covers both of those cases? Obviously, we've exhaustively searched to see whether there's any other court that's interpreted this exclusion or anyone similar to it. And neither party has been able to find a case where this language was interpreted as asbestos or asbestos-containing products. I can tell you that there are cases where courts have found that asbestos exclusions have been limited. ASARCO in Texas, UNR in Illinois, they both dealt with asbestosis exclusions. And the court said in those contexts that the insurance companies intended to write limited exclusions. So there are cases out there that stand for the proposition that not every asbestos-related exclusion excludes everything. Okay. Thank you very much, Mr. Conley. Mr. Boutrous, your rebuttal, please. Thank you, Your Honors. Let me just go back. Counsel started with a citation to a pretrial hearing and said the only word was asbestos. The same transcript, it's docket 624, pretrial conference. This is a quote. Traveler's position here is that its exclusion excludes the claims in this case based on the natural, plain, and ordinary meaning of the words of the exclusion. And again, those words are arising out of asbestos. And on this question, counsel seemed to just say that they don't disagree that there's an ambiguity in the word asbestos. What they're really arguing is that the insurance company was required to include a laundry list that included asbestos-containing products in order to cover, to exclude asbestos. What I think I hear them saying on the other side is that Pennsylvania law says the exclusions are to be read narrowly. That's required of us as a matter of law. And if you want them to be read more broadly, your responsibility is to make that clear. And here you didn't make that clear. That's a misstatement of Pennsylvania law. Madison Construction, same argument was made. The McCabe case, the argument was made that you read things narrowly. What the court said was you read them naturally. And if a party arising out of asbestos is a broader formulation than is arising out of asbestos with a bunch of limiting factors, I think that's the broadest interpretation. And if we go back to Madison Construction, counsel did not really have an answer to it. There it was very similar. It said dispersal of pollution. And the party tried to argue that that meant dispersal of pollution into the environment. And the Supreme Court of Pennsylvania said courts cannot put those limitations required that you include that language in the policy. Here they are asking us to say you have to put in asbestos-containing products into the exclusion. So here's the Pennsylvania law, I think. This is from a Pennsylvania case. Policy exclusions will be given effect if the exclusion is, quote, clear and exact and unambiguous, the burden of proof falling on the insurer. In other words, these exclusions are to be interpreted strictly. And if you want something more than that kind of a strict and narrow interpretation of your language, you're responsible to make that clear as the insurer. Are you saying that's not Pennsylvania law? I think our argument is exactly that, that injuries, and it is injuries and losses, the exclusion itself talks about bodily injury from asbestosis and other diseases. So it could not be clear. Common sense says that if there's asbestos-containing a product and that causes an injury. Well, it could be clear or we wouldn't need asbestos-containing a little bit. But it's the natural plain language. And I want to go back to the counsel again referenced the earlier exclusion. Why would travelers at this point say, yes, we're going to expose ourselves to this company that does not make raw asbestos. It makes products. Yeah, let's just insure this at the same price and take these risks. It's irrational. Indeed, you could have put evidence onto that, right? I mean, you could come to court at the bench trial and said, here's proof, Your Honor. This is proof that this was never intended because, look, here's how we typically would insure. This is the rates we would charge. Here's what we charge these people. It's clear that we weren't charging them for this or we were charging them for that risk. You know, you could have done that and you didn't. Right. That's true, Your Honor, but this was a legal question. I want to go back to the – if the court will just give me another minute. This provision, again, this I think goes on this custom usage. The exclusions, many of them, and Judge Krause, I think, was making this point. They say asbestos contained in a product, many of them. So they use the word asbestos. And the word asbestos there means the same thing it means here. The earlier traveler's exclusion said arises out of, and I am just now using an ellipsis to get to the language, out of asbestos, whether or not, and then it goes on. That is clear, and we respectfully submit that ours is the broadest. This exclusion is the broadest, simplest form of an exclusion. And we respectfully submit that under Madison construction, this court's decision is interpreting the Pennsylvania law. The plain language applies. You can't resort to strained contrivance. That's what Madison construction says, and we respectfully request the court reverse. Okay. Thank you very much. Thank you. Thanks for your arguments. We got the matter under advisement. Appreciate counsel's help, and we'll call our next.